**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV-10-311-FHS |
| ) | |
| TONY WAYNE ABERNATHY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff, the United States of America (the "United States"), on behalf of the United States Army Corps of Engineers (the "Corps"), instituted this action against Defendant, Tony Wayne Abernathy ("Abernathy"), for injunctive relief contending Abernathy has (1) interfered with the flowage easement of the United States on land owned by Abernathy on Eufaula Lake in Oklahoma, (2) trespassed upon property owned by the United States on Eufaula Lake, and (3) violated 36 C.F.R. § 327.20 by placing structures on such Eufaula Lake property owned by the United States. Now before the Court for its consideration is the Motion for Summary Judgment (Doc. No. 36) filed by the United States. Abernathy has filed his Response (Doc. No. 41) and the United States has filed its Reply (Doc. No. 48). Having considered all matters submitted, the Court finds that summary judgment in favor of the United States is appropriate as to its claim for interference with its flowage easement. In all other respects, summary judgment should be denied.

1

**FACTUAL BACKGROUND**

The relevant facts are undisputed.[1] On April 18, 1960, a Flowage Easement Deed was executed by B.L. McCullough ("McCullough") in favor of the United States whereby McCullough conveyed to the United States the perpetual right, power, privilege and easement occasionally to overflow, flood and submerge the land described as may be required in connection with the operation and maintenance of the Eufaula Reservoir on the Canadian River. On July 15, 1960, the Flowage Easement Deed was recorded in Pittsburg County, Oklahoma. The described land is identified in the Flowage Easement Deed as:

> All that part of the following described tracts lying below elevation 602.0' M.S.L.: SE1/4 SE 1/4 SE 1/4 SW1/4; W1/2 NE1/4 SE1/4 SE1/4 SW1/4; the Southwest diagonal half of the W1/2 SE 1/4 NE1/4 SE1/4 SW1/4; E1/2 W1/2 E1/2 SE1/4 SW1/4; W1/2 SE1/4 NE1/4 SW1/4; S1/2 SW1/4 NE1/4 NE1/4 SW1/4; a tract of land in the SW1/4 NE1/4 SW1/4; S1/2 S1/2 NW1/4 NE1/4 SW1/4, more particularly described as: Beginning at the Southwest Corner of said SW1/4 NE1/4 SW1/4; then East 660.00' to the Southeast Corner thereof; thence North 825.00' to the Northeast Corner of said S1/2 S1/2 NW1/4 NE1/4 SW1/4; thence Southwesterly on a straight line to the point of beginning; W/12 NW1/4 NE1/4 SE1/4 SW1/4; NW1/4 SW1/4 NE1/4 SE1/4 SW1/4; N1/2 S1/2 NW1/4 SE1/4 SW1/4; N1/2 NW1/4 SE1/4 SW1/4; NE1/4 NE1/4 SW1/4 SW1/4; and N1/2 SE1/4 NE1/4 SW1/4 SW1/4 of Section 16, Township 9 North, Range 17 East of the Indian Meridian.

---

[1] These undisputed facts are established by the affidavits of Ida Lafayette ("Lafayette"), the Supervisory Realty Specialist of the Management and Disposal Branch, Real Estate Division of the Corps, Tulsa District, and Aimee Jordan ("Jordan"), a Natural Resources Specialist (Park Ranger) for the Corps, Eufaula Lake Project Office. As detailed below, Abernathy does dispute one statement in Jordan's affidavit relating to an August 29, 2007, conversation.

This land was designated as Tracts H-817E-1 through H-817E-4, Eufaula Reservoir Project, containing approximately 3.27 acres. Portions of Lots 23 and 24, Stephenson's Lakeview 2, Pittsburg County, Oklahoma, are within the flowage easement Tract H-817E-2, Eufaula Reservoir Project. The parties have referenced those portions of Lots 23 and 24 as the "flowage easement property." Abernathy acquired the flowage easement property by virtue of two quitclaim deeds. On August 11, 2003, John R. Heusdens executed a quit claim deed in favor of Abernathy as to the flowage easement property. This quit claim deed was filed of record with Pittsburg County, Oklahoma, on May 26, 2005. On May 10, 2007, Sandra K. Heusdens executed a quit claim deed in favor Abernathy as to the flowage easement property. This second quit claim deed was filed of record with Pittsburg County, Oklahoma, on June 5, 2007.

The Flowage Easement Deed acknowledges that the covenant runs with the land and that "no structures for human habitation shall be constructed or maintained on the [] land; and further, that no structure of any type, . . . shall be constructed or maintained on the [] land except such as may be approved in writing by representative of the Government in charge of said project." The Corps is the entity in charge of the Eufaula Reservoir Project. The Corps has never issued to Abernathy a written approval applicable to the flowage easement property.

When Abernathy purchased Lots 23 and 24, Stephenson's Lakeview 2, Pittsburg County, Oklahoma, there was an existing mobile home on the property that had a history of flooding. The mobile home flooded again after Abernathy's purchase and he thereafter destroyed the old mobile home, burned it, and then added fill to raise the elevation of the property. On August 29, 2007, fill dirt was deposited on the flowage easement property. The United States

3

contends Abernathy was informed by Jordan that he could not fill or erect a habitable structure on the flowage easement property. In his affidavit, Abernathy denies that Jordan made this statement to him. Sometime between August 29, 2007, and October 15, 2007, a mobile home was placed on the flowage easement property by Abernathy. Abernathy also built a deck on the flowage easement property sometime before June 4, 2009.

In his affidavit, Abernathy contends that before he started any demolition activities or improvements on the flowage easement property he contacted the Corps to make sure these activities and improvements were allowed. In this regard, Abernathy contends he talked with Ed Parisotto ("Parisotto"), a Natural Resource Specialist for the Corps' Tulsa District, about the "plans for demolition of the existing mobile home, anticipated site work and placement of another mobile home on the [flowage easement property]." Abernathy contends Parisotto told him "it was my property and that what I was proposing would be allowed." Abernathy further states that it wasn't until after he had removed the mobile home, placed fill on the property, and purchased a replacement mobile home that Corps employees, including Jordan, came to the property and told him "[a]lthough we can not stop you, you really should not be doing that." Abernathy states that in reliance on Parisotto's statements he had, by this time, "expended significant sums of money for the demolition, site clearing, fill material purchase and haulings as well as the acquisition of another mobile home." Abernathy estimates that he obligated himself for $85,000 to $95,000 for this work. He further states that the existing mobile home had been on the flowage easement property for decades and he could have simply cleaned it up and refurbished it to stay in compliance with Corps rules and regulations. Finally, Abernathy states that as late as mid-April

4

2008, during a meeting with Corps officials in Tulsa, Parisotto reiterated his position regarding Abernathy's actions with respect to the flowage easement property and, moreover, no Corps official disputed what Parisotto had told Abernathy.

This lawsuit also involves allegations of trespass and unauthorized structures on land owned by the Corps, identified by the parties as "fee-owned property." On April 18, 1960, McCullough sold 103.13 acres, designated as Tract No. H-817, Eufaula Reservoir Project, to the United States by virtue of a General Warranty Deed recorded in Pittsburg County, Oklahoma, on July 15, 1960. This "fee-owned property" is adjacent to the flowage easement property. Multiple encroachments have been placed on the fee-owned property. Abernathy admits that there are multiple encroachments on the fee-owned property, but he denies that he placed any such encroachments on the fee-owned property.

## **ANALYSIS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's application of this standard requires that it "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 910th Cir. 1999). A genuine issue of a material fact exists and summary judgment is inappropriate "if a rational [trier of fact] could find in favor of the non-moving party based on the evidence presented." Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1216 (10th Cir. 2000).

The facts as set forth above clearly establish that Abernathy's activities on the flowage easement property, i.e. the addition of fill to raise the elevation level of the property and the placement of the mobile home, constitute an interference with the rights of the Corps under the flowage easement deed. This case is similar to another case arising out of the Eastern District of Oklahoma involving the Eufaula Reservoir. In United States v. Fisher, 496 F.2d 1146 (10th Cir. 1974), the United States Court of Appeals for the Tenth Circuit affirmed this Court's determination that defendants were prohibited from using landfill within a flowage easement area having an elevation below 602' m.s.l.[2] In Fisher, the government alleged that the defendants had "placed (or [had] permitted to be placed with their knowledge and consent) earth fill within the flowage easement areas so as to raise the surface elevation of the land above 602 feet m.s.l.". Id. at 1148. The government further contended that the use of this fill to raise the elevation of land below 602 feet m.s.l. to above that level "cannot circumvent the flowage easement prohibition against construction for human habitation on land with a pre-fill elevation below 602 feet m.s.l.". Id. In affirming this Court's ruling in favor of the government, the Tenth Circuit rejected the defendants' argument that they had the right to place a "moderate amount" of landfill on the land. The Tenth Circuit concluded:

> [I]t is clear that the Government's flowage easement prohibits the use of landfill to raise the surface elevation of land below 602 feet m.s.l. to above that level in order to build structures for human habitation. Any such claimed right [of a "moderate amount" of landfill], carried to its logical conclusions, would allow the removal of all lands presently within the

---

[2] Just like Abernathy, the defendants in Fisher were successors in title to the ownership of the subject property. Fisher, 496 F.2d at 1148.

6

> easement areas, and consequently would permit the destruction of the Government's easement. The United States acquired the flowage easement in order to be able to overflow, flood and submerge the lands in question in connection with its operation and maintenance of the Eufaula Reservoir on the Canadian River. The use of landfill to raise the elevation of property to above 602 feet m.s.l. thereby removing it from the flowage easement area, is a material interference with the Government's rights under the flowage easement deed. In our view, such landfilling violates, in general, the overall intent and purpose of the Government's easement.

Id. at 1152 (citing United States v. Hughes, 408 F.2d 619 (6th Cir. 1969)). Similarly, Abernathy's actions in placing landfill on the flowage easement property and erecting a new mobile home structure on such property interferes with the Corps' rights under the flowage easement deed.[3]

Abernathy does not challenge the interpretation of the flowage easement nor does he dispute the interference with the Corps' rights, but rather, he contends that the Corps should be equitably estopped from enforcing its rights under the flowage easement deed due to the representations made by Corps personnel regarding his proposed improvements to the flowage easement property. For good reason, a particularly stringent burden is placed on a party seeking to present a case of equitable estoppel against the federal government. "Courts generally invoke estoppel against the government 'only when it does not frustrate the purpose of the

---

[3] In his affidavit, Abernathy acknowledges this interference but contends his actions of placing the fill and new mobile home do not create a "greater burden or interference with the United States Flowage Easement than that which existed before the improvements by me." Abernathy Affidavit at ¶ 9. This is an equitable argument, directed at the nature of the relief available to the United States, and it does not negate the undisputed fact that an interference exists.

7

statutes expressing the will of Congress or unduly undermine the enforcement of the public laws.'" Wade Pediatrics v. Department of Health and Human Services, 567 F.3d 1202, 1206 (10th Cir. 2009)(quoting FDIC v. Hulsey, 22 F.3d 1472, 1489 (10th Cir. 1994)). A party claiming estoppel against the federal government is required to show:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Lurch v. United States, 719 F.2d 333, 341 (10th Cir. 1983). In addition to these traditional elements of equitable estoppel, the Tenth Circuit has imposed the requirement of a showing of "affirmative misconduct on the part of the government" in order to claim equitable estoppel. Hulsey, 22 F.3d at 1489-90. "Mere 'erroneous advice' will not do." Wade Pediatrics, 567 F.3d at 1206 (quoting Hulsey, 22 F.3d at 1489-90).

Abernathy's attempt to invoke the doctrine of equitable estoppel against the Corps must fail as the plain language of flowage easement deed negates any argument that Abernathy was ignorant of the true facts regarding the necessity to obtain written approval from the Corps before any structure could be constructed or maintained on the flowage easement property. See Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 59 n. 10 ("If, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the

8

representation or concealment.")(quoting Restatement (Second) of Torts, § 810, at 219).  The language of the flowage easement deed is clear: "no structure for human habitation shall be constructed or maintained on the above-described land; and further, that no structure of any type . . . shall be constructed or maintained on the above-described land except as *may be approved in writing by representative of the Government in charge of said project*." Flowage Easement Deed, Exhibit 1 to United States' Motion for Summary Judgment (emphasis added).  As a property owner, Abernathy is charged with knowledge of the public records concerning his property including, and in particular, the Flowage Easement Deed. See Heckler, 467 U.S. at 64 ("As a participant in the Medicare program, respondent had a duty to familiarize itself with the legal requirements for cost reimbursement.").  Abernathy's reliance on the alleged oral representations by Parisotto, and the alleged later affirmations by Corps personnel, simply do not negate or overcome the knowledge impressed upon Abernathy by virtue of the clear, unequivocal language of the Flowage Easement Deed. Furthermore, any statements or affirmations made to Abernathy which may have communicated approval of his proposed actions with respect to the flowage easement property do not rise to the level of "affirmative misconduct" necessary for the application of equitable estoppel.  These statements and affirmations, even if taken as true, fall in the category of "erroneous advice" which is insufficient to establish "affirmative misconduct."  Wade Pediatrics, 567 F.3d at 1206.  Consequently, Abernathy's attempt to invoke the doctrine of equitable estoppel is rejected and the United States is entitled to the entry of summary judgment in its favor on its claim for injunctive relief related to the flowage easement property.

With respect to the fee-owned property, however, the Court

finds genuine issues of material fact prevent the entry of summary judgment in favor of the United States. The United States presents two claims in connection with the fee-owned property: trespass and a violation of 36 C.F.R. § 327.20.[4] Nothing in the evidentiary record provided by the United States would authorize the entry of summary judgment against Abernathy on either claim. The affidavits of Lafayette and Jordan - the sole evidentiary support for the Motion for Summary Judgment - are devoid of any evidentiary basis for a finding of trespass and, further, they fail to establish that Abernathy, as opposed to some predecessor in interest, placed the "multiple encroachments" on the fee-owned property.[5] In his affidavit, Abernathy denies having placed any encroachments on the fee-owned property.[6] Given this conflicting record, the Court

---

[4] The rules and regulations governing public use of water resource development projects administered by the Corps, as found in 36 C.F.R. § 327.20 provides, in part:

> The construction, placement, or existence of any structure . . . of any kind under, upon, in or over the project lands, or waters is prohibited unless a permit, lease, license or other appropriate written authorization has been issued by the District Commander.

[5] These "multiple encroachments" have never been identified. While counsel for the United States asserts at page 14 of the Motion for Summary Judgment that "[a] Corps Ranger visited the subject property on October 14, 2009 and observed unauthorized structures including a shed, a paved drive and miscellaneous personal property on the fee-owned property," no evidentiary record has been submitted to enable the Court to identify these "multiple encroachments" with any specificity.

[6] Abernathy states that he "do[es] not oppose the removal of any encroachments located on the U.S. fee-owned property adjacent to my property." Abernathy Affidavit, ¶ 6. Likewise, the Court is not aware of any reason why the Corps cannot remove any structure it may so desire on its fee-owned property. With the record before it at this stage of the proceedings, however, the Court is not justified in ordering Abernathy to remove, at

finds it inappropriate to enter summary judgment in favor of the United States with respect to the fee-owned property.

## CONCLUSION

Based on the foregoing reasons, the United States' Motion for Summary Judgment (Doc. No. 36) is granted as to the flowage easement property and denied as to the fee-owned property.

Abernathy is hereby ordered to remove, at his own cost, all fill, structures and/or improvements made to the flowage easement property and to return the land to an elevation below 602.0' m.s.l. as set forth under the Flowage Easement Deed. If requested by Abernathy, the United States, through Corps officials, shall confer with Abernathy to assure compliance with this order. Abernathy shall comply with this order within 180 days. Any failure to comply with this order shall result in the Court entering an order, upon proper application by the United States, authorizing the United States to remove the fill, structures and/or improvements, and return the land to an elevation below 602.0' m.s.l., and furthering ordering Abernathy to pay all costs incurred by the United States. Abernathy is also permanently enjoined from constructing any further improvements on said flowage easement property without the approval of the Corps.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court directs the entry of final judgment as to the United States' claim with respect to the flowage easement property. The Court finds no just reason for delaying the entry of judgment as to the flowage easement property while the remaining claims for

---

his cost, any such encroachments.

trespass and violation of 36 C.F.R. § 327.20, in relation to the fee-owned property, proceed to trial or other disposition.[7]

It is so ordered this 4th day of August, 2011.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma

---

[7] The Court notes that counsel for the parties informed the Court at the pretrial conference that Abernathy's deposition testimony, taken after the submission of briefs in connection with the Motion for Summary Judgment, may have resolved the issues on the fee-owned property claims. If not, the Court is prepared to proceed to trial on those claims.